J-A15042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RUSSELL BRINSON | : | |
| | : | |
| Appellant | : | No. 2124 EDA 2020 |

Appeal from the Judgment of Sentence Entered May 6, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0006298-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RUSSELL BRINSON | : | |
| | : | |
| Appellant | : | No. 2135 EDA 2020 |

Appeal from the Judgment of Sentence Entered May 6, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0004720-2017

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:        **FILED SEPTEMBER 21, 2021**

Russel Brinson ("Brinson") appeals from the judgments of sentence imposed following his convictions of one count each of possession with intent to deliver heroin, possession with intent to deliver cocaine, possession of heroin, possession of cocaine, and two counts of criminal use of a

communication facility[1] under Docket Number CP-46-CR-004720-2017("4270-2017"); and one count each of possession with intent to deliver heroin, possession with intent to deliver cocaine, possession of heroin, possession of cocaine, and criminal use of a communication facility under Docket Number CP-46-CR-006298-2017 ("6298-2017"). After careful review, we affirm in part and vacate and remand in part.

Prior to trial, Brinson filed an Omnibus Pretrial Motion, and several supplemental Motions, seeking, *inter alia*, to suppress all physical evidence and statements he made to police. The trial court held a hearing and denied the Motions. The trial court set forth findings of fact and evidence presented at the suppression hearing and Brinson's trial, and we adopt those findings as if set forth fully herein. Trial Court Opinion, 8/16/19, at 3-8 (attached and referred to in Trial Court Opinion, 1/15/21, at 2).

Following a consolidated bench trial, Brinson was convicted of the crimes set forth above. The trial court sentenced Brinson under both dockets on May 6, 2019. Under docket number 4720-2017, the trial court sentenced Brinson to twenty-one to forty-two months in prison for possession with intent to deliver heroin, a consecutive sentence of eighteen to forty-two months in prison for possession with intent to deliver cocaine, and twelve to twenty-four months in prison for each count of criminal use of a communication facility, to

---

[1] 35 P.S. § 780-113(a)(30), (16); 18 Pa.C.S.A. § 7512.

be served concurrently with each other, and concurrently with his sentences for possession with intent to deliver. The trial court imposed no further penalty on the other counts.

Under docket number 6298-2017, the trial court sentenced Brinson to twenty-one to forty-two months in prison for possession with intent to deliver heroin, a consecutive sentence of eighteen to forty-two months in prison for possession with intent to deliver cocaine, and twelve to twenty-four months in prison for the criminal use of a communication facility, to be served concurrently with his sentences for possession with intent to deliver. The trial court imposed no further penalty on the other counts. Brinson's sentences at each docket were to run consecutively, for an aggregate sentence of seventy-eight to one-hundred sixty-eight months in prison. Brinson was also assessed costs at each docket number.

Despite convictions under two docket numbers, Brinson originally filed a single Notice of Appeal, in violation of **Commonwealth v Walker**, 185 A.3d 969 (Pa. 2018), and its progeny. Brinson ultimately discontinued his direct appeal and filed a Post Conviction Relief Act ("PCRA")[2] Petition seeking the reinstatement of his direct appellate rights, *nunc pro tunc*. On October 20, 2020, the PCRA court granted Brinson's Petition and reinstated his direct appellate rights, *nunc pro tunc*. Brinson filed Notices of Appeal at both docket

---

[2] 42 Pa.C.S.A. §§ 9541-9546.

numbers, as well as a court-ordered Pa.R.A.P. 1925(b) Statement of Matters complained of on appeal.

Brinson presents the following questions for our review:

A.    Did the suppression court commit an error of law by denying [Brinson's] Motion to Suppress physical evidence and statements?

B.    Did the Commonwealth fail to present sufficient evidence to sustain [Brinson's] conviction of [possession] and possession with intent to deliver cocaine[,] because it did not prove that the substance was cocaine?

C.    Did the sentencing court impose an illegal sentence by imposing the cost of prosecution twice on [Brinson]?

D.    Did the trial court deprive [Brinson] of due process of law by failing to provide him with a bill of costs?

Brief for Appellant at 3 (capitalization omitted).

In his first question, Brinson argues that the trial court erred when it denied his Motion to Suppress.  Brief for Appellant at 17.  In support, Brinson argues that the trial court erred when it denied his Motion to suppress the drugs, cell phones, statements, and information contained in the cell phones, because the police lacked probable cause to conduct the warrantless arrest on May 9, 2017, which led to the discovery of the above items.  *Id.*  Specifically, Brinson argues that the information from the confidential informant ("CI") was stale because it was received by police three months before they began their investigation.  *Id.* at 25.  In support, Brinson relies on ***Commonwealth v. Novak***, 335 A.2d 773 (Pa. Super. 1975).  Brief for Appellant at 17.  He further alleges that the information acquired from the CI did not establish probable

cause to arrest him because the Commonwealth failed to present evidence connecting Brinson to the phone number provided, and he was not observed engaging in any criminal conduct before he was arrested. Brief for Appellant at 18. Brinson avers that the Commonwealth failed to corroborate and confirm the phone number that the CI provided belonged to Brinson prior to his arrest. *Id.* at 22.[3]

Our standard of review of the denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression

---

[3] Brinson further argues that probable cause was not established when Agent Shurr observed him in the area of the arranged buy because, *inter alia*, Brinson did not arrive at the area for an hour; he was not at the "site" of the arranged deal; he lived near the area of the buy; Agent Shurr testified that he often saw Brinson in Norristown; no drug exchanges occurred; and Brinson was not observed speaking on a cellular telephone or otherwise engaging in criminal conduct. Brief for Appellant at 27-30. Finally, Brinson argues that because he was illegally arrested, his volunteered statement should have been suppressed as it was fruit of the illegal arrest. *Id.* at 32. As discussed *infra*, probable cause for the warrantless arrest was established.

court properly applied the law to the facts. Thus, the conclusions of law of the [trial court are] subject to plenary review.

*Commonwealth v. Wright*, 224 A.3d 1104, 1108 (Pa. Super. 2019) (quoting *Commonwealth v. Hoppert*, 39 A.3d 358, 361-62 (Pa. Super. 2012)). "Further, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." *Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa. Super. 2017) (citation omitted). Finally, it is within the suppression court's sole province as factfinder to determine the credibility of witnesses and the weight that should be given to their testimony. *Id.*

In its Opinion, the trial court addressed Brinson's claim and concluded that it lacks merit. Trial Court Opinion, 8/16/19, at 8-10. We find no error or abuse of discretion in the trial court's analysis on this issue and affirm on this basis with regard to this claim, with the following addendum. *See id.*

Concerning Brinson's claim that the information provided by the CI was stale because it was received by police three months before their investigation, we note in the instant case the police corroborated the CI's information, which occurred within forty-eight hours of Brinson's arrest. To the extent Brinson relies on *Commonwealth v. Novak*, 335 A.2d 773 (Pa. Super. 1975), this case is factually distinguishable. In *Novak*, this Court found that probable cause for a search warrant was not established where the information from the CI was received more than a month before the warrant

was issued, and no evidence of continued illegal activity was presented. ***Novak***, 335 A.2d at 775.

In the instant case, the CI's tip was corroborated within forty-eight hours of Brinson's arrest. Here, the police contacted Brinson less than two days before he was arrested, via the phone number provided by the CI, and were able to purchase heroin using the terminology provided by the CI. N.T.(Suppression Motion) 9/28/18, at 44. Under such circumstances, any stale information from the CI was rendered viable. ***See Commonwealth v. Karns***, 566 A.2d 615 (Pa. Super. 1989) (finding that probable cause was established where there was a showing that the illegal activity was occurring up to the issuance of the warrant). ***See also Commonwealth v. Haggerty***, 564 A.2d 1269, 1272 (Pa. Super. 1989) (recognizing that a "[m]ere lapse in time between discovery of criminal activity and issuance of a search warrant will not necessarily dissipate probable cause and a showing that criminal activity is likely to have continued up to the time of issuance of a warrant will render otherwise stale information viable").

Brinson next argues that the evidence was insufficient to sustain his convictions for possession of cocaine and possession with intent to deliver cocaine at docket number 6298-2017, because the Commonwealth failed to prove that the substance at issue was cocaine. Brief for Appellant at 33. In support of his sufficiency claim, Brinson argues that the substance was identified as N-Ethylpentylone, a Schedule 1 substance, and not cocaine. ***Id.***

(citing N.T. (Trial), 1/24/19, at 11-14). Brinson posits that the allegation in the Information does not match the evidence presented at trial; therefore, those charges should be dismissed. *Id.*

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Franklin*, 69 A.3d 719, 722 (Pa. Super. 2013) (citations and quotation marks omitted).

Brinson's argument misstates the record. A review of the record reveals that the only substances tested by the lab at docket number 6298-2017 were found on the victim, and taken from the wax paper bags filled with suspected heroin and stamped "Godzilla."[4] N.T. (Trial), 1/24/19, at 11-12; *Id.* at Exhibit C-3. Indeed, the lab report did not test any substance that was purported to

---

[4] A review of the record and the Affidavit of Probable Cause establishes that Tara Bazemore ("Bazemore") told the victim that Bazemore wanted the victim to buy Bazemore "a hard" (slang for crack cocaine), in addition to the heroin Bazemore was purchasing for the victim. N.T. (Trial), 1/24/19, at 13. Bazemore kept the crack cocaine as payment for facilitating the drug deal between Brinson and the victim. *Id.* Thus, the record reflects that Bazemore did not deliver any crack cocaine to the victim. *Id.* at Exhibit C-4.

be cocaine or sold to Bazemore as cocaine. During trial, the Commonwealth stated that the "The heroin [Brinson] sold to Bazemore for the victim was tested by NMS Labs …." N.T. (Trial), 1/24/19, at 13-14. Neither the lab report nor the notes of testimony make any reference to testing the cocaine sold or given to Bazemore by Brinson. Thus, to the extent Brinson argues that a substance, alleged to be cocaine, was revealed to be N-Ethylpentylone, that argument is not supported by the record.

Moreover, per Brinson's stipulation, it was uncontradicted at trial that Brinson sold Bazemore ten dollars' worth of cocaine and provided her another bag of cocaine *gratis* as a "thank you" for arranging the sale of heroin to the victim. N.T. (Trial), 1/24/19 at 13. The sale to Bazemore occurred two days before Brinson was apprehended with cocaine and heroin following the controlled buy at docket number 4720-2017. **Id.** at 9. Samples of the recovered drugs at docket number 4720-2017 were lab tested and confirmed to be cocaine and heroin. N.T. (Trial), 1/24/19, at Exhibit C-1.

All of the above evidence, taken together in the light most favorable to the Commonwealth, established that Brinson delivered cocaine to Bazemore. **See Commonwealth v. Lawson**, 671 A.2d 1161, 1165 (Pa. Super. 1996) (stating that "[t]he identity of illegal narcotics may be established by circumstantial evidence alone, without any chemical analysis of the seized contraband."). Brinson is due no relief on his sufficiency of the evidence claim.

Brinson's third and fourth issues, which we will address together, relate to costs imposed upon him. In his third issue, Brinson argues that based upon a review of docket numbers 4720-2017 and 6298-2017, numerous costs appear to have been imposed more than once. Brief for Appellant at 37-38. Brinson argues that because the cases were consolidated for trial, costs should have only been imposed in one case, not both. *Id.* at 38.

In his fourth issue, Brinson submits that this case must be remanded for resentencing because he was not provided a copy of the bill of costs, but rather, the trial court-imposed costs "without delineating what the costs were and the amounts attributable thereto." *Id.* Brinson argues that this failure constitutes a violation of his right to due process. *Id.* Brinson asserts that a defendant may only be required to pay costs authorized by statute, and those costs must be reasonable. *Id.* at 39. Brinson further argues that in order to determine whether the costs are reasonable, they must be itemized. *Id.* Brinson asks that we vacate the Order imposing costs and remand the matter for resentencing. *Id.* at 40.

In its brief, the Commonwealth concedes that there should only be one set of costs per case, so any duplicative costs should be vacated. Commonwealth's Brief at 24. As to Brinson's argument that his due process rights were violated because the lower court did not provide him with a bill of costs, the Commonwealth counters that Brinson waived this issue, because he failed to raise the issue at sentencing, in a post-sentence motion, or in his first

Rule 1925(b) Concise Statement. *Id.* at 28. The Commonwealth argues that although the imposition of costs is a non-waivable challenge to the legality of his sentence, Brinson's constitutional claim is waived. *Id.* at 29.

Where an appellant argues that the trial court did not have the authority to impose the costs at issue, this Court has held such an argument implicates the legality of the sentence. ***Commonwealth v. Garzone***, 993 A.2d 306, 316 (Pa. Super. 2010). A claim raising the legality of the sentence is non-waivable and may be raised for the first time on appeal. ***Commonwealth v. Bezick***, 207 A.3d 400, 403 (Pa. Super. 2019).

In its Opinion, the trial court noted that Brinson was ordered to pay the costs of prosecution for counts one (possession with intent to deliver heroin) and two (possession with intent to deliver cocaine) at docket number 4720-17, and counts one (possession with intent to deliver heroin) and two (possession with intent to deliver cocaine) at docket number 6298-17. Trial Court Opinion, 1/15/21, at 4. The trial court noted that the Commonwealth did not provide a bill of costs at sentencing, itemize the costs, or order Brinson to pay a specific amount. *Id.* Thus, the trial court stated that it is without knowledge whether the clerk of courts imposed illegal costs on Brinson and would hold an evidentiary hearing on remand if this Court determines the issue is of merit. *Id.*

Indeed, a review of the dockets reveals a number of costs and fees which appear duplicative of one another. Given that both dockets involved in

this case involve the same crimes (possession with intent to deliver cocaine and heroin, possession of cocaine and heroin, and criminal use of a communication facility), and the cases were consolidated and tried together, a single set of costs should have been imposed. *See Commonwealth v. Adams*, 421 A.2d 778, 779 (Pa. Super. 1980), (concluding that where the appellant was convicted of nine thefts, which were of similar character, those thefts could have been charged in one information and, therefore, only a single set of costs should have been assessed to the appellant.)

Our review further discloses that the costs assessed at the individual dockets are not identical – the total cost is $2,789.75 at docket 4720-2017 and $2,211.75 at docket 6298-2017. As set forth *supra*, it is unclear which costs are duplicative. Thus, we vacate the judgment of sentence and remand to the trial court for a hearing to determine the costs that were illegally assessed against Brinson, after the Commonwealth provides the trial court and Brinson with a bill of costs to facilitate that review. Because the trial court's determination of costs does not impact the sentencing scheme, we vacate only that portion of the judgment of sentence.

Judgment of sentence affirmed on part and vacated in part. Case remanded for further proceedings consistent with this Memorandum. Superior Court jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2021

## COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
### CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-46-CR-0004720-2017 |
| | : | CP-46-CR-0006298-2017 |
| v. | : | |
| | : | 2135 EDA 2020 |
| RUSSELL BRINSON | : | 2124 EDA 2020 |

**OPINION**

HAAZ, J.                                                                  January 15, 2021

### I. INTRODUCTION

Defendant Russel Brinson appeals from the judgment of sentence imposed on May 6, 2019 and the Order denying his pre-trial motions on November 15, 2018. Under Bill of Information 4720-17, Defendant was sentenced to twenty-one (21) to forty-two (42) months of imprisonment for possession with intent to deliver heroin, eighteen (18) to forty-two (42) months of imprisonment for possession with intent to deliver cocaine to be served consecutively and twelve (12) to twenty-four (24) months imprisonment on each count of criminal use of a communication facility to be served concurrently with no further penalty on the remaining counts. Under Bill of Information 6298-17, Defendant was sentenced to twenty-one (21) to forty-two (42) months of imprisonment for possession with intent to deliver heroin, eighteen (18) to forty-two (42) months of imprisonment for possession with intent to deliver cocaine to be served consecutively and twelve (12) to twenty-four (24) months imprisonment for criminal use of a communication facility to be served concurrently with no further penalty on the remaining counts. The sentences under 4720-17 and 6298-17 are to be served consecutively for an aggregate term of seventy-eight (78) to one hundred sixty-eight (168) months imprisonment in a state correctional institute.

## II. PROCEDURAL HISTORY

Defendant originally filed a Notice of Appeal on June 5, 2019. The trial court opinion was filed of record on August 16, 2019. On June 12, 2019, the Superior Court of Pennsylvania ordered Appellant to show cause why the appeal[1] should not be quashed for failure to comply with Pa.R.A.P. 341(a) requiring separate notices of appeal to be filed when a single order resolves issues arising on more than one trial court docket. Defendant's direct appeal was discontinued on October 7, 2019 by order of Defendant's trial and appellate counsel, Mr. James Patrick Lyons, Esquire. On September 3, 2020, Defendant filed a PCRA petition to reinstate his direct appellate rights. On September 21, 2020, the court ordered the Commonwealth to respond to Defendant's petition within twenty days. By letter addressed to the court dated September 22, 2020, the Commonwealth stated it had no objection to the reinstatement of Defendant's appeal rights. On October 1, 2020, Defendant's uncontested PCRA petition was granted and Defendant's direct appeal rights were reinstated.

Defendant filed new Notices of Appeal on October 30, 2020 for both trial court dockets in which only one trial court docket number was included on each notice. Defendant's concise statement of matters complained of on appeal raises the following issues:

1. Appellant avers the Suppression Court erred by denying his motions to suppress physical evidence and his statements in both criminal matters filed against him because the police lacked probable cause to arrest and search him pursuant to the 4th amendment of the US Constitution and article I, section 9 of the Pennsylvania Constitution thereby rendering the evidence seized and statements he made as a result of the illegal arrest and search fruits of the poisonous tree.

2. Appellant avers the Suppression Court erred by denying his motion to suppress phone records obtained by the authorities because his seizure and evidence obtained from his phone(s) were done without probable cause or a valid warrant, in violation

---

[1] 1596 EDA 2019.

2

of the 4th Amendment of US Constitution and article I, section 9 of [the] Pennsylvania Constitution

3. The convictions of possession of cocaine and possession of cocaine with intent to deliver were against the weight of the evidence because the evidence failed to prove that the substance was actually cocaine.

4. The evidence presented by Commonwealth was insufficient to sustain appellant's convictions for possession of cocaine and possession of cocaine with intent to deliver because the evidence failed to establish that the substance allegedly found in his possession was actually cocaine.

5. The sentencing court imposed costs more than once without any statutory authority to do so and in violation of 19 P.S. section 1294 and 42 P.S. section 20003(b).

6. The sentence court failed to provide the defendant with a bill of costs at the time of sentencing to which he could file objections, thereby depriving him of notice and an opportunity to object in violation of due process.

Concise Statements, 11/30/20. Issues numbers one (1) through four (4) were previously addressed

in the trial court's August 16, 2019 opinion, attached hereto.[2] The court refers to its previous

opinion for discussion of these issues raised on appeal.

Issues numbers five (5) and six (6) involve the imposition of the costs of prosecution at

sentencing. These issues were not raised in Defendant's original concise statement and are raised

---

[2] Challenges to the sufficiency and weight of the evidence of the PWID cocaine conviction were raised in Defendant's original concise statement. Issue numbers three (3) and four (4) above include challenges to the weight and sufficiency of the evidence regarding the conviction for possession of cocaine which were not specifically raised in Defendant's first concise statement on June 9, 2019. However, the court addressed both the weight and sufficiency of the evidence regarding Defendant's conviction for the possession with intent to deliver cocaine in its August 2019 opinion. The court refers to its previous opinion as the convictions of possession of cocaine and possession of cocaine with the intent to deliver merged for sentencing purposes. *See Commonwealth v. Edwards*, 449 A.2d 38, 39 (Pa. Super. 1982) ("Delivery necessarily includes possession with the intent to deliver and possession with the intent to deliver clearly includes possession. The charges are therefore merged for sentencing purposes."). Under Bill of Information 4720-2017, the NMS lab report dated May 23, 2017 was admitted into evidence and stated the drugs recovered from Defendant included 1.55 grams of cocaine. (T1 at 8-9; Ex. C-1.) Under Bill of Information 6298-2017, the parties stipulated that the Commonwealth would present evidence supporting that witness Tara Bazemore "met the defendant, who sold her seven bags of heroin and two bags of crack cocaine." (T1 at 13). Defendant's convictions of possession of cocaine are supported by the sufficiency and weight of the evidence.

3

for the first time in the instant appeals. The imposition of costs involve the legality of Defendant's sentence and are not waived. *See Commonwealth v. Purvis*, 237 A.3d 471 (Pa. Super., May 21, 2020). Defendant was ordered to pay the costs of prosecution for counts 1 (PWID heroine) and 2 (PWID cocaine) under Bill of Information 4720-2017 and the costs of prosecution for counts 1 (PWID heroine) and 2 (PWID cocaine) under Bill of Information 6298-2017. The Commonwealth did not provide the court with a bill of costs at sentencing. The court did not itemize the costs of prosecution or order Defendant to pay a specific amount. The court is without knowledge whether the clerk of courts imposed illegal costs upon Defendant after he was sentenced. The court will conduct an evidentiary hearing upon remand if the Superior Court determines that these claims may have merit.[3]

BY THE COURT:

_____
Richard P. Haaz,                    J.

Copies e-mailed on 1/15/21 to:
Kevin R. Steele, Esquire
Robert M. Falin, Esquire
James P. Lyons, Esquire
Clerk of Courts

_____
Secretary

---

[3] These issues are currently before the Commonwealth Court in a class action lawsuit. *See* Complaint, *McFalls*, et al. v. *38th Judicial District*, et al., 4 MD 2021 (Pa. Cmwlth. Jan. 5, 2021).

4

COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : CP-46-CR-0004720-2017
: CP-46-CR-0006298-2017
v. :
:
RUSSELL BRINSON : 1596 EDA 2019
:

## OPINION

HAAZ, J.                                                                 August 16, 2019

## INTRODUCTION

On January 24, 2019, Defendant was convicted in a stipulated bench trial of possession with intent to deliver heroin (UF), possession with intent to deliver cocaine (UF), possession of heroin (UM), possession of cocaine (UM) and two counts of criminal use of a communication facility (F3) under Bill of Information 4720-17 and of possession with intent to deliver heroin and fentanyl (UF), possession with intent to deliver cocaine (UF), possession of heroin and fentanyl (UM), possession of cocaine (UM) and criminal use of a communication facility (F3) under Bill of Information 6298-17. Defendant was found not guilty of violating the Controlled Substance, Drug, Device and Cosmetic Act under count six of Bill of Information 6298-17.

Defendant was sentenced on May 6, 2019 under both bills of information. Under 4720-17, Defendant was sentenced to twenty-one (21) to forty-two (42) months of imprisonment for possession with intent to deliver heroin, eighteen (18) to forty-two (42) months of imprisonment for possession with intent to deliver cocaine to be served consecutively and twelve (12) to twenty-four (24) months imprisonment on each count of criminal use of a communication facility to be served concurrently with no further penalty on the remaining counts. Under 6298-17, Defendant was sentenced to twenty-one (21) to forty-two (42) months of imprisonment for possession with intent to deliver heroin, eighteen (18) to forty-two (42) months of imprisonment

1

for possession with intent to deliver cocaine to be served consecutively and twelve (12) to twenty-four (24) months imprisonment for criminal use of a communication facility to be served concurrently with no further penalty on the remaining counts. The sentences under 4720-17 and 6298-17 are to be served consecutively for an aggregate term of seventy-eight (78) to one hundred sixty-eight (168) months imprisonment in a state correctional institute. Defendant appeals from his judgment of sentence.[1]

On July 31, 2017, Defendant filed an omnibus pre-trial motion that included a motion to suppress. The court held a suppression hearing on September 28, 2018 and issued written findings of fact and conclusions of law on November 15, 2018 which denied Defendant's motion.[2] On January 24, 2019, the court conducted a stipulated bench trial. The parties agreed that all non-hearsay testimony and evidentiary exhibits produced at the suppression hearing were to be incorporated into the Commonwealth's case-in-chief. (T1 at 7:2-16).[3]

Defendant did not file any post-sentence motions following the bench trial and Defendant's convictions and sentencing. Defendant filed a single notice of appeal for both cases on June 5, 2019. On June 6, 2019, the court ordered Defendant to file a concise statement of errors complained of on appeal within twenty-one (21) days pursuant to Pa.R.A.P. 1925(b). On July 9, 2019, Defendant filed the following concise statement of errors complained of on appeal:

1. Instant counsel did not file this statement timely through oversi[ght] and did not intentionally fail to comply with this Honorable Court's Order. Counsel is Court appointed for purposes of this appeal.

2. Defendant aver[]s that the Suppression Court committed error in denying the motions to suppress the physical evidence and statement of defendant in both matters above referenced, in that there was insufficient probable cause to arrest and search

---

[1] Defendant is not challenging any aspect of the sentences in this appeal.

[2] A copy of the court's findings of fact and conclusions of law dated November 15, 2018 is attached hereto.

[3] T1 = Transcript of January 24, 2019 stipulated bench trial
T2 = Transcript of September 28, 2018 suppression hearing

2

defendant, and thus any evidence uncovered as a result of that arrest was fruit of the poisonous tree. Further, the Court erred in denying the motion to suppress the phone records of defendant for the same reason, as well as because the records were obtained without a valid search warrant in violation of the 4th amendment of the US constitution as well as applicable sections(s) of the Pennsylvania Constitution Article I section 9.

3. Defendant requests the Court accept this filing as nunc pro tunc, so as to obviate the need to file PCRA motions on ineffectiveness grounds[], which will only serve to delay the appeal process.

4. Verdict is contrary to the weight of the evidence as to the cocaine PWID Count from the Lower Merion Prosecution as no evidence was produced establishing the substance was cocaine.

5. The evidence was insufficient to support the verdict on said count, for the reason aforementioned.[4]

## FINDINGS OF FACT

### I. Evidence at the Suppression Hearing

The following facts were adduced at the September 28, 2018 evidentiary hearing on Defendant's motion to suppress. Agent Robert Shurr, currently an agent with the Pennsylvania Office of the Attorney General, was a Corporal with the Norristown Police Department at the time of the subject events. (T2 at 15:9-16:20). Officer Joshua Keenan, also of the Norristown Police Department, was assigned to the Community Oriented Police Engagement (COPE) unit. This unit is primarily focused on narcotics crimes that occur in Norristown. (T2 at 15:24-16:7).

---

[4] On June 6, 2019, Defendant was ordered to file a concise statement of errors complained of on appeal within twenty-one (21) days. Defendant filed his concise statement on July 9, 2019, twelve (12) days beyond the deadline for filing. "A failure to comply with such direction may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of." *Commonwealth v. Lord*, 719 A.2d 306, 308 (Pa. 1998). Any deviation from this bright-line rule was viewed disapprovingly by our Supreme Court in *Commonwealth v. Castillo*, 888 A.2d 775 (Pa. 2005). However, subsequent to *Castillo*, Pa.R.A.P. 1925 was amended to include Pa.R.A.P. 1925(c)(3) allowing for a remand to file a concise statement *nunc pro tunc* in certain circumstances where a concise statement is not filed or is untimely filed. As a consequence of the amended rule, "if there has been an untimely filing, [the superior court] may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal. If the trial court did not have an adequate opportunity to do so, remand is proper." *Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009). Accordingly, the court will address Defendant's issues on the merits.

3

Agent Shurr had known Defendant for approximately fifteen years and had between twenty and fifty interactions with him prior to Defendant's arrest in May 2017. (T2 at 19:7-20:12). As a result of this familiarity, Agent Shurr was aware that Defendant sometimes went by the nicknames "Dice" and "Slim." (T2 at 20:24-21:14). Within three months prior to May 2017 Agent Shurr received information from a Confidential Informant (CI) that a person known as "Dice" was selling heroin. (T2 at 21:15-23). Agent Shurr testified that he had worked with this CI before and the CI had provided reliable information in the past leading to multiple arrests and prosecutions. Agent Shurr was unsure if any of these prosecutions led to conviction. (T2 at 22:10-18).

The CI provided Agent Shurr with a telephone number and stated that heroin could be ordered by dialing the number and that Russell Brinson would deliver the heroin. (T2 at 22:21-23:8). The CI told Agent Shurr that the term "platters" was to be used as a code word for heroin when ordering heroin from the telephone number the CI provided. *Ibid.* Despite Agent Shurr's familiarity with street level drugs sales and slang through his work on narcotics investigations, he was unfamiliar with the expression "platters" as used to refer to heroin and believed it to be unique to this circumstance. (T2 at 25:10-11). Agent Shurr relayed all of this information to Officer Joshua Keenan, whom he supervised, for further investigation. (T2 at 25:25-27:4).

Officer Keenan had no prior interaction with Defendant. (T2 at 43:11-13). On May 7, 2017, Officer Keenan sent a text message to the       telephone number provided to Agent Shurr by the CI and received a phone call from that number in response. During this phone call the individual asked for Officer Keenan's name. Officer Keenan told the individual that his name was Mike and requested "two platters." (T2 at 41:9-12; 43:3-10; 44:10-14). The individual contacting Officer Keenan appeared to be familiar with the expression "platters." (T2 at 44:18-21).

4

On May 9, 2017, Officer Keenan again made contact with the individual through both text message and voice calls on two different phone numbers.                and (T2 at 46:17-48:18). Officer Keenan requested two platters and arranged to meet to make the purchase in the area of Airy and Barbadoes Streets or Marshall and Barbadoes Streets in Norristown, Pennsylvania. (T2 at 48:19-23). Officer Keenan was eventually contacted by the individual again who told him that he would "be right there" and that he was going to be coming from Swede Street towards Barbadoes Street. (T2 at 50:12-20). Officer Keenan informed Agent Schurr of the meeting location and the individual's stated path of travel. (T2 at 50:25-51:5). Agent Shurr then parked at the southwest corner of Barbadoes and Marshall Streets in an unmarked police vehicle to await the arrival of the individual delivering the heroin. (T2 at 73:7-13; 75:14).

Agent Shurr began driving east on Marshall when he observed Defendant walking west on Marshall Street. Defendant walked to the corner of Marshall and Barbadoes and got in the front passenger side of a vehicle. (T2 at 73:13-14). As the vehicle began to travel south on Barbadoes toward Airy Street, Agent Shurr stopped Defendant's vehicle in his unmarked police car. (T2 at 75:13-15). Agent Shurr then approached Defendant, "escorted him out of the car" and placed Defendant in custody for "the cell phone violation." (T2 at 76:12-17). Agent Shurr then searched Defendant's person. Agent Shurr confiscated heroin, crack cocaine, and a cellular telephone that were on Defendant's person. (T2 at 79:8-10). Additionally, he recovered a cellular telephone on the passenger seat of the vehicle in which Defendant was stopped. (T2 at 81:18-23).

While Officer Keenan was processing Defendant at the Norristown Police Station, Defendant made a spontaneous unsolicited statement to the effect of "you just had to pick a

5

common name like Mike . . . I should have known it was a funky number." (T2 at 115:21-116:3).

On July 27, 2017, based upon an affidavit prepared and sworn to by Detective Michael Laverty, the Honorable Gary Silow signed an order compelling the disclosure of records and other information "concerning electronic communication service pertaining to the Cricket Communications telephone number                 " including call detail records (CDRs) and cell-site location information (CSLI) for the period May 1, 2017 to May 10, 2017 in accordance with 18 Pa.C.S. § 5743. These CDRs and CSLI were subsequently obtained pursuant to this order. (T2 at 101:15-102:24). The July 27, 2017 order was based on an affidavit prepared and sworn to by Detective Laverty setting forth "specific and articulable facts showing that there were reasonable grounds to believe that the records sought were relevant and material to this ongoing criminal investigation." (T2 at 102:8-12).

On February 16, 2018, in anticipation of the decision in *United States v. Carpenter*, 138 S.Ct. 2206 (June 22, 2018), which required police to obtain a warrant to acquire cell-site location information, the Honorable Todd Eisenberg granted an application for a search warrant and signed an order compelling the same cell phone records which had already been obtained pursuant to Judge Silow's July 27, 2017 order. This search warrant was supported by the same affidavit Detective Laverty used to obtain the July 27, 2017 order by Judge Silow. (T2 at 103:6-104:8).

## II.    Evidence at Trial

The parties stipulated that all non-hearsay evidence introduced at the suppression hearing would be incorporated into the evidentiary record at trial. (T1 at 7:2-16). The parties also agreed to admit the affidavits of probable cause underlying both criminal complaints and the NMS lab reports for each case. (T1 at 9:22-10:15; 14:15-16:6). Under Bill of Information 4720-

6

17, the parties stipulated that the Commonwealth would produce witnesses who would testify to the following at trial. In May of 2017, Officer Joshua Keenan and other members of the Norristown Police Department opened an investigation into Russell Brinson. On May 7, 2017 at 1:45 p.m., Officer Keenan, working in an undercover capacity, reached out to Defendant on his cellular phone via text message. Ex. C-2. Officer Keenan requested "platters" from Defendant, which is a term Defendant used to refer to heroin. On May 9, 2017 at 10:45 a.m., Defendant contacted Officer Keenan via cell phone. *Ibid.* Officer Keenan requested two bundles of heroin. Defendant told Officer Keenan that they could meet on Barbadoes Street in Norristown, between West Marshall Street and West Airy Street, and that he was on his way there.

When Defendant later appeared at the agreed upon meeting location he was stopped by Corporal Adam Shurr. Defendant was later found to be in possession of five bundles of suspected heroin and $425 in United States currency. Defendant acknowledged the phone conversation arranging the deal stating "I can't believe I fell for that. You had to pick a common name like 'Mike.'" The heroin and fentanyl possessed by Defendant was possessed with the intent to deliver and was not for personal use. (T1 at 5:4-6:25). The NMS lab report was admitted into evidence and states that the substances recovered from Defendant were heroin and cocaine in the amounts of approximately one and one-half (1.5) grams each. Ex. C-1. The drugs were divided into approximately sixty-two (62) individual packets of heroin and eighteen (18) baggies of cocaine. *Ibid.*

Under Bill of Information 6298-17, the parties stipulated that the Commonwealth would produce witnesses who would testify to the following at trial. On May 7, 2017, at approximately 10:08 a.m., Upper Merion Police responded to a call regarding an unresponsive person at 441 Jean Drive in Upper Merion Township, Montgomery County. Upon arriving, officers found

7

Katherine Panzano deceased on her living room floor. Officers recovered seven wax paper bags from the pants of the victim filled with suspected heroin and stamped "Godzilla."

The victim's father provided officers with her cell phone. Officers discovered a text message conversation between the victim and a number later identified as that of Tara Bazemore. The conversation occurred between 12:09 a.m. and 2:07 a.m. on May 7, 2017. In the conversation the victim requested heroin from Bazemore. Upper Merion detectives then located Tara Bazemore.

Bazemore provided a written statement and confirmed that she knew Panzano and had helped her facilitate the purchase of heroin on May 7, 2017. On May 7, 2017, between 12:15 a.m. and 12:45 a.m., Bazemore communicated with Defendant, whom knew as "Dice," and arranged for the purchase of seven bags of heroin and two bags of crack cocaine for $80 which was provided to Bazemore by the victim. Bazemore positively identified "Dice" as Defendant. Bazemore stated that the second bag of crack cocaine was given to her by Defendant as a gift for setting up the transaction with the victim. Both bags of crack cocaine were kept by Bazemore who provided the victim with the seven bags of heroin. (T1 at 11:14-14:7). The substance that was found on the victim's person was tested by NMS and confirmed to be a mixture of heroin and fentanyl. Ex. C-3.

## CONCLUSIONS OF LAW

### 1. Motion to Suppress

#### a. The Norristown Arrest

Defendant argues that his warrantless arrest was not supported by probable cause and violated both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution. Defendant further contends that the evidence seized pursuant to

8

the warrantless arrest and his statement were fruits of the poisonous tree and should be suppressed.

A warrantless arrest must be supported by probable cause. *Commonwealth v. Barnett*, 398 A.2d 1019 (Pa. 1979). Any evidence seized pursuant to a search incident to a warrantless arrest made without probable cause must be suppressed. *Commonwealth v. Lovette*, 450 A.2d 975 (Pa.), *cert. denied*, 459 U.S. 1178 (1983). In determining whether probable cause exists to justify a warrantless arrest, the court must consider the totality of the circumstances. *Commonwealth v. Banks*, 658 A.2d 752 (Pa. 1995). "Where, as here, the officers['] actions resulted from information gleaned from an informant, in determining whether there was probable cause, the informant's veracity, reliability and basis of knowledge must be assessed." *In re O.A.*, 717 A.2d 490, 495 (Pa. 1998) (plurality opinion) (citing *Illinois v. Gates*, 462 U.S. 213, 233 (1983)). "[A]n assertion by a police officer as to an informant's reliability with no objective facts to substantiate his assertion is [in]sufficient to support a finding of probable cause." *Id.* at 496. In *In re O.A.*, our Supreme Court held that "an informant's tip, without independent corroboration by police, [is] insufficient to establish probable cause." *Commonwealth v. Luv*, 735 A.2d 87 (Pa. 1999).

It is true that in the instant case, like in *In re O.A.*, the police testimony did not provide any basis of knowledge for the CI's tip and amounted to a bare assertion that the CI had provided reliable information in the past leading to non-specific arrests and prosecutions and no specific convictions. However, the facts here are distinguishable from the facts of *In re O.A.* In *In re O.A.*, the police were acting on an uncorroborated tip from an informant. Here, there was evidence corroborating the informant's tip. Agent Shurr had known Defendant for fifteen (15) years prior to his arrest and knew that he was sometimes referred to as "Dice." This is the name the CI used to refer to the individual for whom he was providing a telephone number. The

9

individual that Officer Keenan called using the number provided by the CI appeared to be familiar with the expression "platters" as slang for heroin, the same expression provided by the CI. Both officers testified that despite their familiarity with narcotics sales in the area, this was not slang previously known to them. Finally, after communicating with the individual using the number provided by the CI and arranging to purchase "platters" at a particular meeting place from the individual, Defendant showed up at the designated meeting place shortly after the individual told police he would "be right there."

Taken together, the totality of the circumstances provided probable cause that Defendant was the individual with whom Officer Keenan had been communicating using the telephone number provided by the CI. Since this implies Defendant was using a communication device to facilitate the delivery of a controlled substance or the attempt thereof, police had probable cause to arrest Defendant for Criminal Use of a Communication Facility in violation of 18 Pa.C.S. § 7512. Further, because the arrest was lawful, evidence seized as a result of the search incident to the arrest, as well as Defendant's spontaneous unsolicited statement while in custody, were not fruits of the poisonous tree and, therefore, should not be suppressed.

b.    The Upper Merion Case

Defendant argues that the evidence obtained pursuant to the July 27, 2017 order compelling disclosure of CDRs and CSLI for the cellular telephone associated with the number should be suppressed because it was obtained in contravention to the holding of *United States v. Carpenter*, 138 S.Ct. 2206 (June 22, 2018). Defendant further argues that re-obtaining the same information pursuant to a search warrant issued on February 16, 2018 did not cure this defect.

The Supreme Court of the United States in *Carpenter* held that "[b]efore compelling a wireless carrier to turn over a subscriber's CSLI, the Government's obligation is a familiar one –

10

get a warrant." 138 S.Ct. at 2221. The retroactive application of *Carpenter* to the present case would therefore make the July 27, 2017 order compelling the disclosure of the CSLI associated with the · number unconstitutional, implying that any CSLI obtained pursuant to that order should be suppressed because it was not obtained as the result of a search warrant supported by probable cause. However, the Commonwealth properly asserted that the "independent source" doctrine made the evidence admissible at trial. "Under this rule, evidence tainted by illegal police conduct (such as an unlawful seizure) nevertheless may be admitted into evidence if the evidence can be fairly regarded as having an origin independent of the unlawful conduct." *Commonwealth v. Henderson*, 47 A.3d 797, 798 (Pa. 2012). "If the prosecution can demonstrate that the [challenged] evidence was procured from an independent origin – a means other than the tainted sources – the evidence will be admissible." *Commonwealth v. Melilli*, 555 A.2d 1254, 1262 (Pa. 1989). Furthermore, *Henderson* abrogated the requirement that the origin of the evidence be "truly independent," in the sense that it originated from an independent investigative team, "in the absence of police misconduct." *Henderson*, 47 A.3d at 802-05.

In the instant case, the parties stipulated that the affidavit used in support of the application for a search warrant giving rise to the July 27, 2017 order was identical to the one used in support of the February 16, 2018 search warrant. The sufficiency of the affidavit is also not being challenged. No information obtained as a result of the July 27, 2017 order was used in support of the February 16, 2018 search warrant. Judge Eisenberg was made aware that the information being sought through the February 16, 2018 search warrant had already been obtained. The July 27, 2017 order was signed by a neutral magistrate in accordance with the law at the time, which had not yet been ruled unconstitutional. There was no police or prosecutorial misconduct in obtaining this evidence. The court found that the independent source doctrine does apply and that the cell phone contents and cell tower evidence should not be suppressed.

11

## 2. Sufficiency of the Evidence for PWID Cocaine Conviction

"[I]n reviewing the sufficiency of the evidence, the appellate court is required to review all the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, . . . [as the verdict winner.]" *Commonwealth v. Brunson*, 938 A.2d 1057, 1058 (Pa. Super. 2007) (quoting *Commonwealth v. Earnest*, 563 A.2d 158, 159 (Pa. Super. 1989)). "The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt." *Ibid.* "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of evidence links the accused to the crime beyond a reasonable doubt." *Ibid.* (quoting *Commonwealth v. Swerdlow*, 636 A.2d 1173, 1176 (Pa. Super. 1994)). "Although a conviction must be based on 'more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.'" *Ibid.* (quoting *Commonwealth v. Badman*, 580 A.2d 1367, 1372 (Pa. Super. 1990)). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Moreno*, 14 A.3d 133, 137 (Pa. Super. 2011). The court notes, importantly, that "the finder of fact is free to believe all, part, or none of the evidence presented in judging the credibility of the witnesses and the weight to be afforded the evidence produced." *Commonwealth v. Henkel*, 938 A.2d 433, 438 (Pa. Super. 2007).

Defendant challenges only the sufficiency of the evidence to convict him of possession with intent to deliver cocaine under Bill of Information 6298-17. The evidence supporting this conviction included the stipulated testimony of Tara Bazemore and the affidavit of probable cause entered into evidence at the stipulated bench trial without objection. Ex. C-4. It was stipulated that Bazemore would have testified that she purchased seven bags of heroin and two bags of crack cocaine from Defendant. This testimony was not contradicted or impeached by

12

any other evidence. Moreover, it was corroborated by other testimony and information found in the affidavit of probable cause. Specifically, that seven wax paper bags containing heroin or traces of heroin were recovered from the victim by Upper Merion police and Bazemore's phone records confirmed interactions with both Defendant and victim at the appropriate times. Katherine Panzano's father, Alexander Panzano, confirmed that the cell phone found on the kitchen table near the victim's body belonged to the victim.

The text messages recovered between the victim and Bazemore between 12:09 a.m. and 2:07 a.m. on May 7, 2017 were about facilitating the purchase of heroin and crack cocaine. They began with the victim texting Bazemore, "Hey r u awake I need to get some d." The affiants wrote that based on their experience and training they knew "the letter 'd' to be an abbreviation of the word 'dope.' "'Dope' is a street term commonly associated with the drug heroin." Ex. C-4. Based on their experience and training the affiants knew that the word "hard" in the text "It's a go and I want you to get me a hard" was a street term "commonly associated with the drug crack cocaine." *Ibid.*

In her statement to police, Bazemore said she helped the victim purchase heroin and, in return, was given $10 to purchase crack cocaine for herself. *Ibid.* The drugs were purchased from Defendant, whom Bazemore knew by the name "Dice," the same name that officers and their CI knew was associated with Defendant. *Ibid.* Bazemore later positively identified Defendant as the individual in question. In combination, this evidence was sufficient to find beyond a reasonable doubt that Defendant possessed cocaine with the intent to deliver.

### 3. Weight of the Evidence for PWID Cocaine

The court first notes that Defendant did not raise this issue before sentencing or through a post-sentence motion as required by Pa.R.Crim.P. 607. Therefore, Defendant has waived this

13

issue. *See* Pa.R.Crim.P. 607 cmt. ("The purpose of this rule is to make clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived.").

"The law in this Commonwealth has long been that a new trial may be ordered 'on the ground that the verdict is against the weight of the evidence, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice, and the award of a new trial is imperative so that right may be given another opportunity to prevail.'" *Commonwealth v. Murray*, 597 A.2d 111, 113 (Pa. Super. 1991) (quoting 10 *Standard Pennsylvania Practice*, New Trial, § 62:59). "Whether a new trial should be granted on such grounds is addressed to the sound discretion of the trial court." *Ibid.* "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000).

Here, Defendant's conviction for possession with intent to deliver cocaine under Bill of Information 6298-17 was supported by the weight of the evidence. The uncontradicted evidence addressed in the previous section all clearly pointed to Defendant's guilt regarding this offense. Although no cocaine was actually recovered in this case, the well-corroborated testimony of Bazemore proves beyond a reasonable doubt that Defendant did possess cocaine and did intentionally deliver that cocaine to Bazemore along with heroin. This conviction did not shock any sense of justice and should not be disturbed.

14

## CONCLUSION

Accordingly, the court respectfully recommends that Defendant's judgments of sentence should be affirmed.

BY THE COURT

_____
Richard P. Haaz,                                    J.

Copies sent on 5/16/15 to:

**By inter-office mail:**
Kevin Steele, Esquire, DA
Robert Falin, Esquire, ADA
**By first class mail:**
James Lyons, Esquire

_____
Judicial Secretary

15